**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| CARLA S. GOODMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM OPINION<br>AND RECOMMENDATION**<br><br>1:08CV554 |

Plaintiff, Carla S. Goodman, brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI)[1] on December 23, 2004 (protective filing date,

---

[1] Plaintiff's SSI application is not included in the transcript.

December 21, 2004), alleging a disability onset date of October 14, 2004.[2] Tr. 18. The application was denied initially and upon reconsideration. Tr. 15. Plaintiff requested a hearing de novo before an Administrative Law Judge (ALJ). Id. Present at the hearing, held on December 18, 2007, were Plaintiff, her attorney, and a vocational expert (VE). Id.

By decision dated February 11, 2008, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 24. On June 25, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 5, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
>
> 2. The claimant has not engaged in substantial gainful activity since October 14, 2004 (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe combination of impairments: fibromyalgia and depression (20 CFR 404.1520© and 416.920©).

Tr. 17-18. He continued:

---

[2] Plaintiff had previously filed applications for DIB and SSI on April 18, 2002, alleging a disability onset date of March 9, 2002. Tr. 15. Those applications, and related documents, have been made part of the current administrative record. It does not appear that either claim was pursued beyond its initial denial or reopened with the instant applications.

2

Case 1:08-cv-00554-NCT-WWD   Document 13   Filed 11/05/09   Page 2 of 9

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work consisting of simple routine tasks in a fairly low stress environment with occasional contact with coworkers and the public.

Tr. 18-19. The ALJ also determined that Plaintiff was unable to perform her past relevant work. Tr. 23.

Plaintiff, born on July 29, 1969, was 38 years old at the time of the ALJ's decision, regulatorily defined as "a younger individual age 18-49." See id. (citing 20 C.F.R. §§ 404.1563 and 416.963). The ALJ found that Plaintiff has at least a high school education and can communicate in English. He added that transferability of job skills was not an issue in the case. Based on these factors, Plaintiff's residual functional capacity (RFC), and the VE's testimony, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." Id. (citing 20 C.F.R. §§ 404.1560©, 404.1566, 416.960©, and 416.966). Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, from October 14, 2004, through the date of his decision. Tr. 24.

**Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ erred in evaluating the credibility of Plaintiff's symptom testimony regarding the need to lie down during the day due to fatigue. The

3

Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[3] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions (the "sequential evaluation process"). An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. 20 C.F.R. § 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v.

---

[3] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issue

As stated above, Plaintiff claims that the ALJ erred in discrediting symptom testimony regarding her alleged need to lie down during the day due to fatigue. In support of this argument, Plaintiff invokes SSR 96-7p, as adopted by the Fourth Circuit in Craig v. Chater, 76 F.3d 585 (4th Cir. 1996), which provides the following two-step test for evaluating a claimant's statement about symptoms. (docket no. 10

5

p. 3.) "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 594 (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). In the present case, Plaintiff alleges a specific fatigue symptom due to documented fibromyalgia. Thus, her case hinges instead on the second step of the test, which requires that

> *. . . after* a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, . . . the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated. See 20 C.F.R. §§ 416.929(c)(1) & 404.1529(c)(1). Under the regulations, this evaluation must take into account not only the claimant's statements about her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings, see id.; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), see 20 C.F.R. §§ 416.929(c)(2) & 404.1529(c)(2); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it, see 20 C.F.R. §§ 416.929(c)(3) & 404.1529(c)(3).

Id. at 595. In other words, the credibility of Plaintiff's symptom testimony must be weighed in light of the record as a whole.

Here, Plaintiff contends that the ALJ failed to consider all of the evidence in the record prior to discrediting her alleged need for daytime rest. Specifically, Plaintiff alleges that "[t]he ALJ rejected the symptom allegation solely on the basis

6

that it is not substantiated by objective medical evidence." (docket no. 10 p. 7.) Based on a thorough evaluation of the administrative record, this Court disagrees. As Defendant correctly notes in his brief, Plaintiff's testimony lacks support of any kind, not just supporting medical evidence. (See docket no. 12.)

At her hearing on December 18, 2007, Plaintiff testified that, on a typical day, she "stay[s] pretty tired," requiring her to lay down for an average of two hours in the morning and an additional hour in the afternoon. Tr. 408-409. The VE listed several suitable jobs for Plaintiff prior to this testimony, but upon cross-examination she admitted that all of these jobs would be eliminated as possibilities if Plaintiff could not tolerate an eight-hour workday. Tr. 435. The ALJ's questioning of the VE suggests the same. Tr. 434-435. As such, there is no question that a need to lie down for three hours during a typical workday would preclude Plaintiff's regular employment. The issue, however, is not whether Plaintiff's need for daytime rest would preclude her employment, but whether her alleged rest requirement was entitled to credibility.

Significantly, during the initial application stages, Plaintiff did not allege a level of fatigue which required resting during the day, Tr. 53-54; this allegation arose first, and only, during Plaintiff's December 18, 2007, testimony before the ALJ. It does not appear in the questionnaire in which she listed her symptoms and limitations. Tr. 68. In fact, while Plaintiff alleges in the questionnaire that she experienced "constant pain" from her fibromyalgia, she also claims that she ultimately stopped

working, not as a result of fibromyalgia or its symptoms, but as a result of ongoing problems with mitral valve prolapse and depression. Id. She also worked for over six years following the onset of her medical conditions, during which time she claims that these conditions did not affect her job attendance or performance. Id.

More recent documentation also lacks significant fatigue allegations. While the function report provided by Plaintiff's sister, dated July 11, 2005, reports that Plaintiff's constant pain "interferes" with almost all physical activities, there is no mention of fatigue beyond Plaintiff's need to rest "just for a couple of minutes" after walking a short distance. Tr. 60. This fails to substantiate Plaintiff's alleged need to lie down for an hour or two at a time. The same can be said of Plaintiff's medical records from the Center for Arthritis and Rheumatic Diseases, where she was treated for fibromyalgia. Although Plaintiff discussed daytime fatigue with her treating physician, see, e.g., Tr. 251-255, the records never mention daily rests, even when sleep hours were specifically addressed, Tr. 255.

In sum, regardless of whether the ALJ considered evidence outside of the medical records in deciding the credibility of Plaintiff's symptom testimony, the outcome of her case remains unchanged. Nothing in the record, medical or otherwise, supports Plaintiff's alleged need for extended daytime rest periods. As such, the Court finds no reversible error.

8

Case 1:08-cv-00554-NCT-WWD   Document 13   Filed 11/05/09   Page 8 of 9

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence, and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (docket no. 9) seeking a reversal of the Commissioner's decision should be **DENIED**. Defendant's motion for judgment on the pleadings (docket no. 11) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

WALLACE W. DIXON
United States Magistrate Judge

November 5, 2009